**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **CHRISTY GRAVES, DAVID KLOZIK,** § | |
| **EDWARD ARIEL MEJIA, BRICE** § | |
| **OWENS, STEVEN SCHREIBER,** § | |
| **BRAD  SWEETMAN, AND ADAN** § | |
| **TREJO, JR., JUAN CELESTIAL,** § | |
| **TOMMY CROSBY, EFRAIN** § | |
| **HERNANDEZ, ISAAC PINSON,** § | |
| **SHANNON NICHOLS, MARTIN** § | |
| **ENCISCO, DUSTY AND CANDACE** § | |
| **LUCAS AS NEXT FRIEND OF A.L.,** § | |
| **GLEN AND TAMMY PEEK** § | |
| *Plaintiffs,* § | |
| § | |
| **DAVID BAECKER, GAY MCCOY,** § | **CIVIL ACTION NO. 4:17-CV-03068** |
| **KEVIN MCCOY, INDIVIDUALLY AND** § | |
| **AS NEXT FRIEND OF KURTIS T.** § | |
| **MCCOY, STEPHEN BURNS,** § | |
| **JOHNATHAN LAMM, JUAN CEPEDA** § | |
| **AND NORMA CEPEDA,** § | |
| **INDIVIDUALLY AND AS NEXT** § | |
| **FRIENDS OF L.C., TROY AND** § | |
| **DANYEL REUTER, INDIVIDUALLY** § | |
| **AND AS NEXT FRIENDS OF JADEN** § | |
| **REUTER AND BROOKE REUTER** § | |
| *Intervenor Plaintiffs,* § | |
| § | |
| **vs.** § | |
| § | |
| **ARKEMA, INC., RICHARD RENNARD,** § | |
| **RICHARD P. ROWE AND ANDREW** § | |
| **BURDETT AND BUREAU VERITAS** § | |
| **NORTH AMERICA, INC.** § | |
| *Defendants.* § | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

**NOW  COMES** Plaintiffs Christy Graves, David Klozik, Edward Ariel Mejia, Brice

Owens, Steven Schreiber, Brad "Bryan" Sweetman, Adan Trejo, Jr., Juan Celestial, Tommy

Crosby, Efrain Hernandez, Isaac Pinson, Shannon Nichols, Martin Encisco, Glen and Tammy

Peek, John Anderson, Jerome Batiste, Cheri Batiste, Brandy Blackwelder, Kevin Cox, Veronica

Cox, Bear Thread Designs, Inc., Donna Craft, David Craft, Andrew Craft, Roland Cruz, Aurea

Cruz, Roberto Cruz, Doralynn Davenport, Joyce Dillard, Aaron Shane Doby, Luis Galan, Valeria

Ramirez, Elka Galnnier, Daussent Galnnier, Terri Glover, Wayne Glover, Ada Hill, James Hill,

Retha Hill, Timothy Hoover, Donald Hoover, Peggy Hoover, Jerel Jacobs, Amanda Jacobs, Lloyd

"Ray" Kirkpatrick, Channelview Refractory Services , Dusty and Candice Lucas,  Candice Lucas

a/n/f of Adalynn Lucas, Dusty Lucas, Jeff Lummas, Huong Nguyen, H & H DINH Investment,

LLC,  Anabely Perez, Honoria Perez, Santos Perez, Ruby Perez, Emily Perez, Mike Petrey, Janice

Petrey, Steven Ramey, Jacqueline Ramey, Melvin Ramey, Billy Ramey, Jose Ramirez, Aurelia

Ramirez, Sylvia Ramirez, Devona Nikki Roberts, Devona Roberts a/n/f of M. R., Devona Roberts

a/n/f of C.R., Robby Smith, Bonnie Smith, Kehlin Smith, Eric Smith, Diyanna Smith, Erica Smith,

Kathy Smith, Ricky Smith, Kristin Stewart, Sharon Stiles, Edith Talbert, Robert Talbert III, Edith

Talbert a/n/f of A.T., Edith Talbert a/n/f of R.T., Sherie Ann Taylor, Allen Bruns, Tracy Taylor,

Ronnie Walker,  Brenda Watkins,  Ronnie Watkins,  Rod Watkins, Debra Watkins, Trampus

Weaver, Tammy Weaver, John Abbott, Don Fender, Clayton Ehrlich, Gerald Shelton, Matthew

Smith, Orlando Jacobs, Brenda Diaz-Solis, Francisco Euresti, Robert Kruszynski, Luis Ramirez,

Russell Ashworth, Edgar Batarse, Claudia Batarse, Vincent Batiste, Sondronique Batiste,  Linda

Bogan, Charles Bogan, Tracey Bratton, Robert Buckholt, Horacio Carpio, Jazmin Caprio, Jazmin

Carpio a/n/f of A.C., Jazmin Carpio a/n/f of J.C., Alejo Carpio, Maria De Jesus Melendez, Maria

De Jesus Melendez a/n/f of A.C.,  Maria De Jesus Melendez a/n/f of A.L.C.,  Maria De Jesus

Melendez a/n/f of A.C., Jr., Traci Chandler, Thomas Chandler, James Chandler, Jr., Allan Joe

Cisneros, Thomas Lewis, Don Nichols, Ernest Nobles, Linda Nobles, Dagoberto Perez, Maria

Elena Perez, Cecilio Ramirez, Kathy Rice, Mark Santos, Leanna Santos, Mary Thomas, Bryan

Thornhill, Rena Thomas Wilcox, David Wilkinson, Melissa Wilkinson, Johnny Zacharias, named Plaintiffs in the above-entitled and numbered cause, and files this Third Amended Complaint and respectfully shows the Court as follows:

# I.    <u>PARTIES</u>

## A.    PLAINTIFFS[1]

1.      Plaintiff, Christy Graves, is an Individual who resides is in Harris County.

2.      Plaintiff, David Klozik, is an Individual who resides in Harris County.

3.      Plaintiff, Edward Ariel Mejia, is an Individual who resides in Harris County.

4.      Plaintiff, Brice Owens, is an Individual who resides in Harris County.

5.      Plaintiff, Steven Schreiber, is an Individual who resides in Harris County.

6.      Plaintiff, Brad "Bryan" Sweetman, is an Individual who resides in Harris County.

7.      Plaintiff, Adan Trejo, Jr., is an Individual who resides in Harris County.

8.      Plaintiff, Juan Celestial, is an Individual who resides in Harris County.

9.      Plaintiff, Tommy Crosby, is an Individual who resides in Harris County.

10.     Plaintiff, Efrain J. Hernandez, is an Individual who resides in Harris County.

11.     Plaintiff, Isaac Pinson, is an Individual who resides in Harris County.

12.     Plaintiff, Shannon Nichols, is an Individual who resides in Harris County.

13.     Plaintiff, Martin Encisco, is an Individual who resides is Harris County.

14.     Plaintiff, Dusty Lucas, is an Individual who resides in Harris County.

15.     Plaintiff, Candace Lucas, is an Individual who resides in Harris County.

16.     Plaintiff A. L. is a minor and resides in Harris County, Texas.  She therefore brings

---

[1] Plaintiffs consist primarily of three groups: (1) First responders; (2) Personal injury Plaintiffs; and (3) Property Damage Plaintiffs.  There may be overlap amongst these groups.  For example, each of the First Responders suffered personal injuries and some of the Personal Injury Plaintiffs suffered property damages.

this action by and through her mother, Candace Lucas, as next friend.

17.     Plaintiff, Glen Peek, is an Individual who resides in Harris County.

18.     Plaintiff, Tammy Peek, is an Individual who resides in Harris County.

19.     Plaintiff, John Anderson, is an Individual who resides in Harris County.

20.     Plaintiff, Jerome Batiste, is an Individual who resides in Harris County.

21.     Plaintiff, Cheri Batiste, is an Individual who resides in Harris County.

22.     Plaintiff, Brandy Blackwelder, is an Individual who resides in Harris County.

23.     Plaintiff, Kevin Cox, is an Individual who resides in Harris County.

24.     Plaintiff, Veronica Cox, is an Individual who resides in Harris County.

25.     Plaintiff, Bear Thread Designs, Inc. is a Texas corporation with its principal place of business in Harris County, Texas.

26.     Plaintiff, Donna Craft, is an Individual who resides in Harris County.

27.     Plaintiff, David Craft, is an Individual who resides in Harris County.

28.     Plaintiff, Andrew Craft, is an Individual who resides in Harris County.

29.     Plaintiff, Roland Cruz, is an Individual who resides in Harris County.

30.     Plaintiff, Aurea Cruz, is an Individual who resides in Harris County.

31.     Plaintiff, Roberto Cruz, is an Individual who resides in Harris County.

32.     Plaintiff, Doralynn Davenport, is an Individual who resides in Harris County.

33.     Plaintiff, Joyce Dillard, is an Individual who resides in Harris County.

34.     Plaintiff, Aaron Shane Doby, is an Individual who resides in Harris County.

35.     Plaintiff, Luis Galan, is an Individual who resides in Harris County.

36.     Plaintiff, Valeria Ramirez, is an Individual who resides in Harris County.

37.     Plaintiff, Elka Galnnier, is an Individual who resides in Harris County.

4

38.     Plaintiff, Daussent Galnnier, is an Individual who resides in Harris County.

39.     Plaintiff, Terri Glover, is an Individual who resides in Harris County.

40.     Plaintiff, Wayne Glover, is an Individual who resides in Harris County.

41.     Plaintiff, Ada Hill, is an Individual who resides in Harris County.

42.     Plaintiff, James Hill, is an Individual who resides in Harris County.

43.     Plaintiff, Retha Hill, is an Individual who resides in Harris County.

44.     Plaintiff, Timothy Hoover, is an Individual who resides in Harris County.

45.     Plaintiff, Donald Hoover, is an Individual who resides in Harris County.

46.     Plaintiff, Peggy Hoover, is an Individual who resides in Harris County.

47.     Plaintiff, Jerel Jacobs, is an Individual who resides in Harris County.

48.     Plaintiff, Amanda Jacobs, is an Individual who resides in Harris County.

49.     Plaintiff, Lloyd "Ray" Kirkpatrick, is an Individual who resides in Harris County.

50.     Plaintiff, Channelview Refractory Services, LLC is a Texas corporation with its principal place of business in Harris County, Texas.

51.     Plaintiff, Jeff Lummas, is an Individual who resides in Harris County.

52.     Plaintiff, Huong Nguyen, is an Individual who resides in Harris County.

53.     Plaintiff, H & H DINH Investment, LLC is a Texas corporation with its principal place of business in Harris County, Texas.

54.     Plaintiff, Anabely Perez, is an Individual who resides in Harris County.

55.     Plaintiff, Honoria Perez, is an Individual who resides in Harris County.

56.     Plaintiff, Santos Perez, is an Individual who resides in Harris County.

57.     Plaintiff, Ruby Perez, is an Individual who resides in Harris County.

58.     Plaintiff, Emily Perez, is an Individual who resides in Harris County.

59.     Plaintiff, Mike Petrey, is an Individual who resides in Harris County.

60.     Plaintiff, Janice Petrey, is an Individual who resides in Harris County.

61.     Plaintiff, Steven Ramey, is an Individual who resides in Harris County.

62.     Plaintiff, Jacqueline Ramey, is an Individual who resides in Harris County.

63.     Plaintiff, Melvin Ramey, is an Individual who resides in Harris County.

64.     Plaintiff, Billy Ramey, is an Individual who resides in Harris County.

65.     Plaintiff, Jose Ramirez, is an Individual who resides in Harris County.

66.     Plaintiff, Aurelia Ramirez, is an Individual who resides in Harris County.

67.     Plaintiff, Sylvia Ramirez, is an Individual who resides in Harris County.

68.     Plaintiff, Devona Nikki Roberts, is an Individual who resides in Harris County.

69.     Plaintiff, M.R. is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Devona Roberts, as next friend.

70.     Plaintiff, C.R. is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Devona Roberts, as next friend.

71.     Plaintiff, Robby Smith, is an Individual who resides in Harris County.

72.     Plaintiff, Bonnie Smith, is an Individual who resides in Harris County.

73.     Plaintiff, Kehlin Smith, is an Individual who resides in Harris County.

74.     Plaintiff, Eric Smith, is an Individual who resides in Harris County.

75.     Plaintiff, Diyanna Smith, is an Individual who resides in Harris County.

76.     Plaintiff, Erica Smith, is an Individual who resides in Harris County.

77.     Plaintiff, Kathy Smith, is an Individual who resides in Harris County.

78.     Plaintiff, Ricky Smith, is an Individual who resides in Harris County.

79.     Plaintiff, Kristin Stewart, is an Individual who resides in Harris County.

80.     Plaintiff, Sharon Stiles, is an Individual who resides in Harris County.

81.     Plaintiff, Edith Talbert, is an Individual who resides in Harris County.

82.     Plaintiff, Robert Talbert III, is an Individual who resides in Harris County.

83.     Plaintiff, A.T. is a minor and resides in Harris County, Texas.  She therefore brings this action by and through her mother, Edith Talbert, as next friend.

84.     Plaintiff, R.T. is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Edith Talbert, as next friend.

85.     Plaintiff, Sherie Ann Taylor, is an Individual who resides in Harris County.

86.     Plaintiff, Allen Bruns, is an Individual who resides in Harris County.

87.     Plaintiff, Tracy Taylor, is an Individual who resides in Harris County.

88.     Plaintiff, Ronnie Walker, is an Individual who resides in Harris County.

89.     Plaintiff, Brenda Watkins, is an Individual who resides in Harris County.

90.     Plaintiff, Ronnie Watkins, is an Individual who resides in Harris County.

91.     Plaintiff, Rodrick "Rod" Watkins, is an Individual who resides in Harris County.

92.     Plaintiff, Debra Watkins, is an Individual who resides in Harris County.

93.     Plaintiff, Trampus Weaver, is an Individual who resides in Harris County.

94.     Plaintiff, Tammy Weaver, is an Individual who resides in Harris County.

95.     Plaintiff, John Abbott, is an Individual who resides in Harris County.

96.     Plaintiff, Don Fender, is an Individual who resides in Harris County.

97.     Plaintiff, Clayton Ehrlich, is an Individual who resides in Harris County.

98.     Plaintiff, Gerald Shelton, is an Individual who resides in Harris County.

99.     Plaintiff, Matthew Smith, is an Individual who resides in Harris County.

100.    Plaintiff, Orlando Jacobs, is an Individual who resides in Harris County.

101.   Plaintiff, Brenda Diaz-Solis, is an Individual who resides in Harris County.

102.   Plaintiff, Francisco Euresti, is an Individual who resides in Harris County.

103.   Plaintiff, Robert Kruszynski, is an Individual who resides in Harris County.

104.   Plaintiff, Luis Ramirez, is an Individual who resides in Harris County.

105.   Plaintiff, Russell Ashworth, is an Individual who resides in Harris County.

106.   Plaintiff, Edgar Batarse, is an Individual who resides in Harris County.

107.   Plaintiff, Claudia Batarse, is an Individual who resides in Harris County.

108.   Plaintiff, Vincent Batiste, is an Individual who resides in Harris County.

109.   Plaintiff, Sondronique Batiste, is an Individual who resides in Harris County.

110.   Plaintiff, Linda Bogan, is an Individual who resides in Harris County.

111.   Plaintiff, Charles Bogan, is an Individual who resides in Harris County.

112.   Plaintiff, Tracey Bratton, is an Individual who resides in Harris County.

113.   Plaintiff, Robert Buckholt, is an Individual who resides in Harris County.

114.   Plaintiff, Horacio Carpio, is an Individual who resides in Harris County.

115.   Plaintiff, Jazmin Caprio, is an Individual who resides in Harris County.

116.   Plaintiff, A.C., is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Jazmin Carpio, as next friend.

117.    Plaintiff, J.C., is a minor and resides in Harris County, Texas.  She therefore brings this action by and through her mother, Jazmin Carpio, as next friend.

118.   Plaintiff, Alejo Carpio, is an Individual who resides in Harris County.

119.   Plaintiff, Maria De Jesus Melendez, is an Individual who resides in Harris County.

120.   Plaintiff, A.C., is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Maria De Jesus Melendez, as next friend.

121.    Plaintiff, A.L.C., is a minor and resides in Harris County, Texas.  She therefore brings this action by and through her mother, Maria De Jesus Melendez, as next friend.

122.    Plaintiff, A.C., Jr., is a minor and resides in Harris County, Texas.  He therefore brings this action by and through his mother, Maria De Jesus Melendez, as next friend.

123.    Plaintiff, Traci Chandler, is an Individual who resides in Harris County.

124.    Plaintiff, Thomas Chandler, is an Individual who resides in Harris County.

125.    Plaintiff, James Chandler, Jr., is an Individual who resides in Harris County.

126.    Plaintiff, Allan Joe Cisneros, is an Individual who resides in Harris County.

127.    Plaintiff, Thomas Lewis, is an Individual who resides in Harris County.

128.    Plaintiff, Don Nichols, is an Individual who resides in Harris County.

129.    Plaintiff, Ernest Nobles, is an Individual who resides in Harris County.

130.    Plaintiff, Linda Nobles, is an Individual who resides in Harris County.

131.    Plaintiff, Dagoberto Perez, is an Individual who resides in Harris County.

132.    Plaintiff, Maria Elena Perez, is an Individual who resides in Harris County.

133.    Plaintiff, Cecilio Ramirez, is an Individual who resides in Harris County.

134.    Plaintiff, Kathy Rice, is an Individual who resides in Harris County.

135.    Plaintiff, Mark Santos, is an Individual who resides in Harris County.

136.    Plaintiff, Leanna Santos, is an Individual who resides in Harris County.

137.    Plaintiff, Mary Thomas, is an Individual who resides in Harris County.

138.    Plaintiff, Bryan Thornhill, is an Individual who resides in Harris County.

139.    Plaintiff, Rena Thomas Wilcox, is an Individual who resides in Harris County.

140.    Plaintiff, David Wilkinson, is an Individual who resides in Harris County.

141.    Plaintiff, Melissa Wilkinson, is an Individual who resides in Harris County.

142.    Plaintiff, Johnny Zacharias, is an Individual who resides in Harris County.

**B.    DEFENDANTS**

143.    Arkema, Inc., Defendant herein, is a Pennsylvania Corporation doing business in the State of Texas.  Based upon information and belief, Arkema, Inc. is the owner of the property and facility located at 18000 Crosby Eastgate Road, Crosby, Texas 77532, hereinafter ("Crosby facility").  As detailed on its website, Arkema, Inc. maintains a corporate headquarters in Texas, located at 9502B Bayport Boulevard, Pasadena, Texas, 77507.[2]  Arkema has availed itself of the jurisdiction and laws of the State of Texas.  Arkema, Inc., has previously answered and appeared in this action.  Arkema, Inc. is a subsidiary of Arkema, S.A.

144.    Richard P. Rowe, Defendant herein, is an Individual who is a resident of the State of Pennsylvania and may be served with process at the following address:  900 First Avenue, King of Prussia, Pennsylvania 19406, or wherever he may be found. Service of said Defendant as described above can be effected by personal delivery. Defendant Rowe has subjected himself to the jurisdiction of Texas by committing torts in Harris County, Texas, as more fully described below. Richard Rowe has previously answered and appeared in this action.

145.    Bureau Veritas North America, Inc., ("Bureau Veritas") is a Delaware Corporation doing business in the State of Texas and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.  Based upon information and belief, Bureau Veritas North America, Inc. provided air quality monitoring, recording, and reporting of the evacuation zone following the initial explosion at the Arkema facility and during the Arkema mandatory evacuation. Bureau Veritas consultants from its 16800 Greenspoint Park Drive, Ste. 3005, Houston Texas, 77060 location tested the air throughout the

---

[2]  https://www.arkema.com/en/all-arkema-locations/?country=northamerica/usa/.

evacuation zone in the presence of the First Responder Plaintiffs. Bureau Veritas has availed itself of the jurisdiction and laws of the State of Texas.  Bureau Veritas has previously appeared and answered in this action.

146.    Defendant Arkema, S.A. is a publicly traded foreign corporation having its principal place of business in Colombes, France.  Defendant Arkema, S.A. is the parent corporation of Defendant Arkema, Inc.  Upon information and belief, Arkema, S.A. exercises complete dominion and control over its wholly-owned subsidiary, Defendant Arkema, Inc. such that they do not in reality constitute separate and distinct corporate entities, but are, instead, one and the same corporation for purposes of jurisdiction.  Based upon information and belief, Arkema S.A. exercises and controls the internal business operations and affairs of its subsidiary, Arkema, Inc. As a result, Arkema, S.A. is responsible for the damages caused to the Plaintiffs by its subsidiary. Further, Defendant, S.A. is directly responsible for its own conduct, failure to act and negligence including but not limited to failing to exercise due diligence when it purchased the facility that is the subject of this lawsuit and in its failure to properly manage environmental risks, in its failure to insist that corporate environmental policies be followed and in its failure to properly capitalize Defendant Arkema, Inc. Defendant Arkema, S.A. managed, oversaw, planned, conducted, participated in, allowed, capitalized and profited from negligent, dangerous, hazardous and/or ultra-hazardous handling, storage, production and disposal of the toxic chemicals found at the facility which is the subject of this lawsuit.  Arkema, Inc. and Arkema, S.A. are collectively referred to herein as "Arkema." Service upon Arkema, S.A. can be obtained through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

## II.    VENUE AND JURISDICTION

147.    This suit was originally filed in Harris County state court.  On October 12, 2017,

Arkema filed its Notice of Removal asserting jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1). Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1446(a), in that it is the judicial district and division within which the state action was originally filed.

148.    Generally speaking, it would not offend "traditional notions of fair play and substantial justice" to require any of the Defendants to defend themselves in this forum, since each of them has availed themselves of the benefits and privileges of doing business in Texas; each one of them is at home in the State of Texas; each has continuous, systematic contacts with the State of Texas; and the sum and total of the contacts, ties and relations of each of the defendants to the State of Texas are sufficient to give rise to the exercise of personal jurisdiction over them by courts in this State.

149.    Specific to Arkema, this Court has specific jurisdiction over Arkema as Arkema owns property located in Texas, including the Crosby facility, and Defendant has purposely availed itself of the privilege of conducting business and activities within Texas; it has substantial and continuous contacts with the State of Texas, generally and with respect to this action, to satisfy both general and specific minimum contacts; and exercising jurisdiction over it does not offend the traditional notions of fair play and substantial justice.  Importantly, Arkema has corporate headquarters in Pasadena, Texas pursuant to the Arkema website.

150.    The Court has specific and general personal jurisdiction over Defendant Richard P. Rowe because Richard P. Rowe purposefully availed himself of the laws of the State of Texas by committing torts in Harris County, Texas, as more fully described herein.

151.    The Court has specific and general personal jurisdiction over Defendant Bureau Veritas because Defendant Bureau Veritas has committed torts in the State of Texas, has purposely

availed itself of the privilege of conducting business and activities within Texas; it has substantial and continuous contacts with the State of Texas, generally and with respect to this action, to satisfy both general and specific minimum contacts; and exercising jurisdiction over it does not offend the traditional notions of fair play and substantial justice.

### III.   FACTS

152.   On or about August 25, 2017, Hurricane Harvey struck the coast of the State of Texas as a Category 4 hurricane.  Subsequently, Hurricane Harvey moved slightly inland and stalled for several days, all the while churning massive amounts of rain into the southeast Texas area, including east Harris County, where the town of Crosby, Texas resides.

153.   Over the course of those several days, Hurricane Harvey dropped in excess of fifty (50) inches of rain in and around Crosby, Texas.  While Hurricane Harvey did cause massive devastation as a result of the rain which poured down from it, the residents and businesses in southeast Texas were given several days' notice that a major rain event was coming.  Moreover, this is not the first time Houston has seen massive amounts of rain, nor is it the first time that widespread areas of Houston and surrounding areas have suffered from flooding as a result of massive amounts of rain.  This has happened before.  As a matter of fact, this has happened so many times before that most industries, private businesses and even governmental agencies have put in place physical structures and written procedures to prevent harm and damage to their properties and the people in their communities.  Unfortunately for the Plaintiffs herein, Arkema, failed to heed the warnings and ignored the foreseeable consequences of failing to prepare.

*"Arkema—Innovative Chemistry"*

154.   Arkema is a specialty chemicals manufacturer that "supports the chemical industry by developing intermediate products which are essential to manufacturing processes. Its products

are also used in the operating processes of industrial facilities."
https://www.arkema.com/en/markets-and-solutions/solutions/plastics-and-additives/. Worldwide,
Arkema has annual sales of EUR 5.7 billion (US$7 billion) and 15,200 employees, 80 industrial
sites in more than 40 countries and six research and development centers.

155.    Arkema owns and operates plants and facilities throughout the world, including
facilities in Bayport, Texas, Beaumont, Texas, Clear Lake, Texas, Houston, Texas, and Crosby,
Texas.  Its Crosby facility is located 18000 Crosby Eastgate Road, Crosby, Texas 77532. The site,
at 18000 Crosby Eastgate Road, is located in a floodplain and has experienced flooding in the past.



156.    Arkema contends that its Crosby facility "is in a rural area with no hospitals,
schools, correctional facilities or recreational areas or industrial/commercial areas in the vicinity"
yet Crosby High School and Crosby Middle School are a mere five miles away; Crosby Church is
less than three miles away; Newport Elementary is less than six miles away; and hundreds of
homes are within 1.5 miles of the plant.  When you expand the radius to five miles, well over a
thousand Crosby residents live within the immediate vicinity.

157.    The Crosby facility produces liquid organic peroxides that are primarily used in the
production of plastic resins, polystyrene, polyethylene, polypropylene, PVC and polyester

reinforced fiberglass, and acrylic resins.[3]  By its own admission, organic peroxides are unstable

and must be maintained and stored in refrigerated temperatures to avoid their deterioration.  Thus,

safe handling of these volatile chemicals is required.

### *Arkema Has a Long History of Mishandling the Volatile Chemicals it Produces.*

158.     According to its June, 2014 Risk Management Plan for the Crosby facility,[4]

Arkema "is committed to employee, public, and environmental safety by conducting its operations

in a safe and responsible manner."  Its history, however, says otherwise.

159.     Despite the volatility of the organic peroxides it produces, in recent history, Arkema

has been repeatedly cited for mishandling the very chemicals it produces.  For example, in 2006,

the Crosby facility was cited and subject to penalties by the Texas Commission on Environmental

Quality ("TCEQ") because of a fire caused by Arkema's failure to appropriately store organic

peroxides. Records show that a pallet of organic peroxide was poorly stored, resulting in the blaze,

and more than a ton of volatile organic compounds were discharged.  The fire led to discharge of

3,200 pounds of volatile organic compounds along with other harmful pollutants.

160.     Just five years later, in 2011, the facility was again cited and penalized for failure

to maintain proper temperatures of the thermal oxidizer. The TCEQ found that Arkema had failed

to keep thermal oxidizers, which are used to decompose hazardous gases, at high enough

temperatures over the course of several months.  In a 2012 letter, the Occupational Safety and

---

[3] According to Arkema, the following raw materials are maintained on site: 2-ethylhexanoyl chloride distilled; acetic acid 84%; acetone; aromatic 100; benzoyl chloride; caustic potash 45%; caustic soda 50%; cumene hydroperoxide; dimethyl hexadiene; dimethyl hexane diol DH-S; Epsom salts; hexane; hydrogen peroxide 70%; isoamylene; isobutylene; isopropryl alcohol; mineral oil, white; mineral spirits odorless; monosodium phosphate; neodecanoyl chloride; pivaloyl chloride 95-100%; propylene glycol; sodium bicarbonate; sodium bicarbonate anhydrous light; sodium chloride; sodium sulfate anhydrous; sodium sulfite anhydrous; sulfur dioxide; sulfuric acide 93% reagent ACS;  T-butyl  hydroperoxide  70%.   https://www.arkema-americas.com/en/social-responsibility/incident-page-2/products-and-raw-materials/

[4] Arkema's risk management plans ("RMP") are subject to a five year update, pursuant to 40 FR 68.190(b)(1).  It's most recent RMP was filed 6/11/2014.

Health Administration ("OSHA") said Arkema's storage plants lacked "design calculations for the worst case scenario."

161.    A 2015 report by the Center for Effective Government focused on Arkema and six other chemical plants and found that those plants sometimes led the nation in safety violations, according to a compilation of government inspection records from 2012 to 2014. According to the report, during that time period, Arkema accumulated nearly 80 violations at its various U.S. facilities.

162.    In 2016, OSHA originally fined Arkema $100,000 but the fine was later reduced to $91,724.  OSHA cited and fined Arkema after finding 10 violations at the Crosby facility, many involving the mishandling of hazardous materials. EPA records as recent as 2016 reveal that Arkema stores a number of suspected or known carcinogens at its Crosby facility, including cumene and benzoyl chloride. Eight of the ten violations fall under the category of "process safety management of highly hazardous chemicals," meaning Arkema was breaking rules meant to prevent the "catastrophic releases of toxic, reactive, flammable, or explosive chemicals."

163.    And while Arkema purportedly maintains "an accidental release prevention program" to "minimize the risk of hazardous chemical releases" those programs have clearly failed.  Arkema and its Crosby facility have racked up over a dozen violations and "informal enforcement actions" over safety and environmental problems over the past five years, according to records from the Environmental Protection Agency and OSHA.

164.    Records indicate that Arkema had has a history of utilizing equipment even when safety systems were not working properly.  Those records further indicate that Arkema failed to inspect and/or test as recommended.[5] In one unit, the company also failed to ensure equipment

---

[5] Yet, in Arkema's June, 2014 RMP, Arkema contends that "environmental and safety critical equipment is inspected

there was safe and/or failed to keep its nearly sixty employees up to date on their training.

165.    In short, while Arkema contends that "there have been no accidental releases of applicable RMP chemicals from [its] facility" from 2009-2014, that simply isn't the truth.  Arkema has a pattern and practice of cutting corners, failing to properly maintain the Crosby facility, and failing to properly store and maintain the highly volatile chemicals it produces.  The events following Hurricane Harvey were just a matter of time.  It was a forgone conclusion.

### *Precautions Were Never Taken.  First Responders Were Never Warned.*

166.    In 2008, Hurricane Ike made landfall over Galveston, killing 103 people and causing more than $50 billion in damage. The following year, Arkema identified floods and hurricanes — ***as well as power failure and loss of cooling*** — as threats to its Crosby site. Still, Arkema did little to update its contingency plans. The plans, which the company must file with the EPA every four years, likewise failed to include any measures to raise critical equipment like backup generators above possible flood levels. Nor did the plans call for isolating hazardous materials from high wind or water—two very common hazards of any hurricane or tropical storm that could foreseeably and regularly hit the gulf coast.

167.    Thus, it should come as no surprise that as news reports began warning of the devastating rains that could be expected from Hurricane Harvey—nearly a week before its landfall, few steps were taken at the Crosby facility to guard against the very threats that Arkema had identified following Hurricane Ike. Arkema did not transfer its highly volatile products from its warehouse to a location off site---despite the fact that the Crosby facility is in a flood plain—but instead, to transferred the products to diesel-powered refrigerated containers on site.  Those containers were not raised or elevated.

---

on a planned, periodic basis to ensure proper operating conditions."

168.   Arkema then abandoned ship.  One employee was evacuated on Monday, August 28, 2017.   Eleven other employees were evacuated the very next day when the nitrogen refrigeration in the back-up containers also began to fail.  By 7:00 PM on August 29, 2017, the Crosby facility had been completely abandoned—there was no "ride out" crew remaining.  There were no monitors or means of preventing a catastrophic release and Arkema knew it.

169.   After directing its employees to abandon the facility,[6] Arkema and governmental officials established an arbitrary 1.5 mile radius around the Crosby facility, and all residents in that radius were mandatorily evacuated from their homes and businesses.  Bureau Veritas was charged with monitoring the air quality of the evacuation zone and worked hand-in-hand with Arkema employees in doing so.

170.   Despite the knowledge that First Responders would be working in and around the evacuation zone, Arkema and Bureau Veritas failed to properly disclose and warn First Responders, including Plaintiffs, herein, of the dangers associated with the chemicals at the Crosby facility.  Information obtained post-incident indicates that a toxic soup of chemicals were released from the Crosby facility, including: Acetic acid; Cumene; Isoprene; Propylene; Acetone; Diborane; Isopropanol; Propylene Oxide; Acrolein; 1,1-Dichlororethene; Isopropyl Acetate; Silicon Tetrafluoride; Acrylonitrile; Dichloromethane; MAPP; Sulfur Dioxide; Acrylic Acid; Dichlorodifluoromethane; Methyl Acetate; Sulfur Hexafluoride; Allyl Alcohol; 1,1-Difluoroethane; Methyl Ethyl Ketone; Sulfur Mustard; Ammonia; Difluoromethane; Methanol; Nitrogen Mustard;[7] Arsine; Ethanol; Methylbromide; Phosgene; Bis-Chloroethyl Ether; Ethyl

---

[6] Reports indicate that Arkema officials never directly notified local governmental officials of the pending failure of the refrigerated storage units.  Instead, information came by way of the plant's workers who told the Crosby Volunteer Fire Department when they were rescued and evacuated from the Crosby facility.

[7] According to the Centers for Disease Control, nitrogen mustards were originally produced as potential chemical warfare weapons.       Nitrogen mustards are not found naturally occurring in the environment. https://emergency.cdc.gov/agent/nitrogenmustard/basics/facts.asp

Acetate; Methylene Chloride; Phosphine; Boron Tribromide; Ethyl Formate; Methyl Methacrylate; Tetrachloroethylene; Boron Trifluoride; Ethylene; MTED; 1,1,1-Trichloroethane; 1,3-Butadiene; Formic Acid; Naphthalene; Trichloroethylene; 1-Butene; Freon 134a; n-Butyl Acetate; Trichloromethane; 2-Butene; GA (Tabus); n-Butyl Alcohol; Triethylamine; Carbon Tetrachloride; GB (Sarin);[8] Nitric Acid; Triethylphosphate; Carbonyl Chloride; Germane; Nitrogen Trifluoride; Trimethylamine; Carbon Tetrafluoride; Hexafluoroacetone; Phosphorus Oxychloride; Trimethyl Phosphite; Chlorodifluoromethane; Isobutylene; Propyl Acetate; and Vinyl Acetate.

171.    The known byproducts associated with the organic peroxide that burned include the following: Carbon Dioide, Ethane, Acetone, t-amyl alcohol, branched Nonanes, ethane, methane, 2-Butanone, ethane acetone, heptane, heptenes, 2-ethylhexanoic acid, benzene, benzoic acid, t-butyl phenyl ether, t-butyl alcohol, 2,5-dihydroxy-2-5, dimethylhexane, methyl ethyl ketone, mesltyl oxide.

172.    Many of the chemicals found in the air immediately following the releases from the Crosby facility are known carcinogens.  Others are highly caustic, requiring the use of personal protection, including chemical protection suits with a self-contained breathing apparatus, filter respirators, and other preventative measures.

173.    Despite these apparent and known dangers and risks, Arkema failed to disclose to the First Responder Plaintiffs, the public, and the media, of the dangers associated with exposure.

---

[8] According to the Centers for Disease Control, sarin is nerve agent that is one of the most toxic of the known chemical warfare agents.  Exposure to sarin can cause death in minutes.  A fraction of an ounce of sarin on the skin can be fatal. https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750001.html.  The presence of both nitrogen mustards and sarin in the air explains the "terrorism concerns" raised by Arkema post-incident, as well as the presence of the Department of Homeland Security and other Department of Defense officials in the Crosby area immediately following the first release.

Instead, Arkema worked with local government authorities and stationed the First Responder Plaintiffs within the 1.5 mile evacuation zone.  First Responder Plaintiffs were stationed at the intersections of: Adlong Johnson and Highway 90; Janeck and Highway 90; Adlong School Road and Highway 90; Ramsey Loop and Ramsey Road; Lord Road and Highway 90; Bohemian Hall Road and Euell Road; Crosby Eastgate and Highway 90; Bohemian Hall and Highway 90.  None of the First Responders were equipped with respiratory protection, chemical safety suits, or protection.

174.    Bureau Veritas was also well aware of the First Responder Plaintiffs and, during the evacuation, communicated with the First Responder Plaintiffs regularly.[9]  Despite this fact, Bureau Veritas failed to warn the First Responder Plaintiffs of high levels of chemicals in the immediate air from the explosions and fires from the Arkema facility.

175.    The First Responder Plaintiffs, charged with establishing and maintaining a perimeter around the evacuation zone, were never informed of the potential dangers and long term risks associated with the chemical releases and fires in their immediate vicinity.  Both Arkema and Bureau Veritas failed to properly disclose, warn, and advise the First Responder Plaintiffs and other first responders that precautions, including breathing apparatuses, HAZMAT wear, and the like, would be necessary to do so.

### The Temporary Storage Units Failed.  Toxic Vapors Filled the Air as First Responders Manned the Evacuation Zone.

176.    In the early morning hours of August 31, 2017, the first of several explosions occurred as a result of the abandoned chemicals heating up and igniting.  Although the explosions

---

[9] During the evacuation, Officers witnessed Bureau Veritas employees sleeping in their cars, instead of monitoring air quality equipment.  Following one release, a Bureau Veritas monitor who was in the process of obtaining a reading on his equipment denied the presence of any chemicals in the air and advised the Officer that the pungent smell was a dead cow.  The officer described the smell as a strong, unbearable chemical odor and certainly not that of a dead cow.

had occurred, no one from Arkema alerted the first responders who were manning the perimeter of the arbitrary mandatory evacuation area.  Immediately upon being exposed to the fumes from the explosion, and one by one, the police officers and first responders began to fall ill. As result of their exposure, the First Responder Plaintiffs were overcome—complaining of nausea, vomiting, high blood pressure, headaches, nose and throat irritation and dizziness. Calls for medics were made, but still no one from Arkema or Bureau Veritas warned of the toxic fumes in the air.

177.    One officer, upon reporting the presence of a large, white vapor crossing Highway 90, was told it was a low lying weather cloud.  Yet, the unknown substance filled the patrol car. The officers were unable to see or breathe.  Their eyes and skin began to burn as the irritating stench filled the air.

178.    Emergency medical personnel arrived on scene, and even before exiting their vehicle, were overcome by the fumes as well.  The scene was nothing less than chaos.  Police officers were doubled over vomiting, unable to breathe.  Medical personnel, in their attempts to provide assistance to the officers, became overwhelmed and they too began to vomit and gasp for air.  Some of the police officers, unable to abandon their vehicles due to their weapons being present, jumped in their vehicles and drove themselves to the nearest hospital.

179.    Other officers and medical personnel were all placed in ambulances and driven to a local hospital where they we decontaminated, standing nearly naked, outside of the hospital. Each of the First Responder Plaintiffs were subjected to that scene, that chaos, and those toxic fumes.  Other first responders, including a Plaintiff herein, was overcome by chemical fumes while attending to a Crosby resident well outside the 1.5 mile radius of the Crosby facility.

180.    At least 2 tons of highly unstable chemicals exploded and burned that first night.[10]

---

[10] The TCEQ called the smoke "especially acrid and irritating" and said it can impair breathing and inflame the eyes,

The explosions blew open a trailer containing the chemicals, lighting up the sky with 30- to 40-foot flames. Aerial footage revealed a trailer carcass, its sides melted, burning in a flooded lot.  As the days followed, the First Responder Plaintiffs were subjected, repeatedly to this exposure, as they were forced to return and man the evacuation zone.

### *Crosby Homeowners Were Forced to Abandon Their Homes*

181.    Just days before the first failure, fire, and release of toxic chemicals, Arkema directed local governmental bodies and others to impose a mandatory evacuation of the 1.5 mile radius of homes in the immediate vicinity of the Crosby facility.  Residents in the zone, including Plaintiffs herein, were mandatorily evacuated.   Many of Hurricane Harvey's victims, already inundated by water, were forced to leave their homes. Others whose homes remained intact after the Hurricane, were forced to abandon their homes, livestock, even family pets, as law enforcement came door-to-door forcing them to leave their homes.  For those who had already suffered flood damage, there was little they could do—water was left to sit in their homes until they were allowed to return.  At that point, these homeowners could do nothing to stop the spread of mold and mildew in their homes—left abandoned for over a week.

182.    During the evacuation, residents of Crosby and surrounding areas, including Plaintiffs, were made to sit and wait, waiting for the inevitable explosion of toxic chemicals into the air in and around their homes.  On the news, Arkema's representatives held press conferences in Harris County, Texas and repeatedly denied that the chemicals were toxic or harmful in any manner to the people, and first responders, in the community.  During one such press conference, an Arkema representative remarked that the toxicity of the smoke from the Arkema facility is "a relative thing."  In another press conference, Rennard admitted that the smoke and fire would cause

---

nose and throat.

irritation "just like any fire." When questioned regarding the nature of the chemicals being released and their dangers, Rowe refused to identify the chemicals by name, instead answering that the chemicals were "nothing that would pose any long-term harm or impact," and any sustained environmental impact would be "minimal."[11] Plaintiffs relied upon these representations and suffered serious bodily injuries as a result.

183.   Several more days after the initial explosion and release, residents had grown impatient, waiting to be allowed back into their flooded homes, which were incurring further damage each day they were kept away.  Several more explosions occurred.  On September 3, 2017, Arkema intentionally ignited the remaining containers of chemicals, sending plumes of smoke, ash, chemicals and other compounds into the air that could be seen for miles.  Debris fell all around (well outside the arbitrary perimeter) on people, their homes, their yards, their animals, their property, and their children.  More people became exposed to the fumes, and those that had been previously exposed were still trying to recover from the physical limitations they suffered days prior.

184.   For those that stayed, the TCEQ warned of irritation, headaches and "decreased lung function" as a result of the fire, advising people to stay indoors with windows, doors and air-conditioning vents closed.

185.   Residents began returning to their homes on Labor Day—less than twenty-four hours following the intentional ignition of a number of chemical containers in the late afternoon

---

[11] In that same press conference, Rowe also told local officials that the evacuation was not mandatory and he was uncertain whether the 1.5 mile radius around the Crosby facility was "devoid" of people.   *See* https://www.wsj.com/articles/arkema-warns-it-cant-prevent-potential-chemical-explosion-in-texas-1504124326.
Yet, due to its location and the volatile peroxides its produces, in 2016, well before Hurricane Harvey, the Crosby facility was identified on a list of Houston-area industrial sites with the highest potential for catastrophe in the event of a natural disaster by the Mary Kay O'Connor Process Safety Center at Texas A&M University.

of September 3, 2017.  Once residents returned home, they were exposed to a laundry list of chemicals remaining in the air.[12]  Local news agencies reported that residents returning to their homes were advised, by Arkema, "to use protective clothing and drink bottled water until further notice."[13]  If it were actually safe for residents to return to their homes, such precautions would not be necessary.

186.    Residents, including plaintiffs herein, who had no health issues before the evacuation, soon began complaining of upper respiratory infections, bronchitis, pneumonia, itchy, burning eyes, tight, burning throats, and the like—illnesses and injuries that did not exist prior to the explosions and fires at the Arkema facility and illnesses resulting from and exacerbated by the explosions and fire at the Arkema facility.

187.    As result of the fire, explosions, and mandatory evacuation, Plaintiffs herein have suffered property damages, including: injury to the land that resulted in cost of repairs, loss of use, or any combination thereof; injury to improvements that resulted in cost of repairs, loss of use, or any combination thereof; injury to business, that resulted in lost profits, loss of credit or reputation thereof, loss of goodwill, or any combination thereof; injury to personal property that resulted in cost of repairs, loss of use, or any combination thereof; and diminution in property value.

## IV.    CAUSES OF ACTION

188.    Plaintiffs incorporate by reference all preceding paragraphs as if fully stated herein and further states as follows:

---

[12] To date, Arkema has failed to share and/or disclose the material-safety data information of the chemicals involved with the public or the First Responders Plaintiffs.  Based upon information and belief, at least two of the chemicals believed to have been released are toxic and known carcinogens, requiring monitoring by the EPA.

[13] *See* http://abc13.com/residents-allowed-to-return-around-arkema-plant/2372451/.  To date, no one from Arkema has advised Plaintiffs or the Crosby community to cease this practice.

## A.     NEGLIGENCE

189.     On the occasion in question, as more fully described above in Section III, Defendants committed acts of omission and commission, which collectively and separately constituted negligence.  Defendants had a duty to exercise ordinary care, meaning that degree of care that would be used by any chemical company of ordinary prudence under the same or similar circumstances, and Defendants breached that duty, including but not limited to one or more of the following ways:

a.     In failing to properly store chemicals at the Crosby facility;

b.     In failing to develop, implement, and maintain proper procedures for the backup refrigeration of chemicals stored at the Crosby facility;

c.     In failing to develop, implement, and maintain proper safety procedures and protocol concerning the safe maintenance of the highly toxic and inherently dangerous chemicals maintained at the Crosby facility;

d.     In failing to have adequate procedures in place to protect the safety and welfare of the community in the event of a catastrophe;

e.     In failing to provide the public and first responders accurate information on the chemicals at risk of exploding;

f.     In failing to properly warn the public and first responders concerning the risks and dangers associated with the highly toxic and inherently dangerous chemicals maintained at the Crosby facility;

g.     In failing to implement and maintain proper procedures, as established by Arkema, and governmental agencies regarding, concerning the safe and proper handling of chemicals at the Crosby facility; and

h.     In failing to adequately prepare for a major flood event, having had the knowledge that such an event was foreseeable.

190.     As to Defendant Bureau Veritas, Defendant failed to properly disclose and warn the First Responder Plaintiffs of the high levels of dangerous chemicals and carcinogens in the immediate air from the explosions and fires from the Arkema facility.  Bureau Veritas further failed to properly disclose, warn, and advise the First Responder Plaintiffs and other first

responders that precautions, including breathing apparatuses, HAZMAT wear, and the like, would be necessary.

191.    Defendants' breaches were a proximate cause of the occurrence in question and the injuries and damages sustained by Plaintiffs herein.

**B.    GROSS NEGLIGENCE**

192.    Defendants unconscionably and wantonly neglected to take the actions reasonably required to correct its past mistakes and omissions and unconscionably and wantonly neglected to reasonably protect the citizens of Crosby, Texas and surrounding communities from the unreasonably dangerous condition it created.  These acts of omission and commission, included, but were not limited to those as described herein under Section V (A).

193.    Defendants committed acts of omission and commission, which collectively and severally, constituted malice under Texas law, which malice was a proximate cause of the accident described herein.  Plaintiffs seek exemplary damages as allowed by law in an amount to be determined at trial.  These acts of malice involved an extreme degree of risk considering the probability and magnitude of harm to others; and of which Defendants had actual, subjective awareness of such risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

**C.    NEGLIGENCE *PER SE***

194.    Defendants' conduct described herein constitutes an unexcused breach of duty imposed by law. Plaintiffs are members of the class that the law was designed to protect. Defendants' unexcused breach of the duty imposed by the law proximately caused the Plaintiffs' injuries described herein.

### D.     NEGLIGENT MISREPRESENTATION

195.    Arkema and Bureau Veritas, through the various representations made, supplied false information to Plaintiffs, the Crosby community, and public at large concerning the Crosby facility, the risk and consequences of the explosions, and the like.  Defendants downplayed the risks associated with the explosions, fire, and toxicity of the chemicals at issue.  Defendants further represented that the dangers associated with the explosions and fire at the Crosby facility were akin to standing next to a campfire or the result of a decaying animal.

196.    Defendants supplied this false information and failed to exercise reasonable care when doing so.  Plaintiffs relied upon these representations to their detriment.  Plaintiffs justifiably relied upon these representations.

197.    As a proximate result of Defendants' negligent misrepresentations Plaintiffs have suffered substantial harm and injury.  Plaintiffs are entitled to recover all actual damages, both general and special, against Defendant for tortious representations.

### E.  NUISANCE

198.    Defendant Arkema's actions as described herein constitutes a public and private nuisance.  Specifically, Defendants interfered with and/or invaded Plaintiffs' private interest in their land by conduct that is negligent, intentional and unreasonable, and/or abnormal and out of place in its surroundings.  Defendants further created a condition that resulted in unreasonable interference with rights common to the general public, and its conduct unreasonably interfered with the public's health and safety.  As a result of Defendants' conduct, Plaintiffs live in a state of fear preventing them from using and enjoying their property, and Plaintiffs' property values have diminished as a result.  This conduct substantially interferes with Plaintiffs' private use and enjoyment of the land and caused injury to the Plaintiffs.  Plaintiffs have suffered harm to their

property and persons, as well as personal discomfort and annoyance. Plaintiffs are entitled to exemplary damages in addition to any other damages awarded based upon Defendant's conduct.

### F. TRESPASS

199.    Defendant Arkema's action described herein constitutes a trespass upon Plaintiffs' property. The Plaintiffs are owners of real property and Defendant Arkema's actions constituted a physical, intentional, voluntary and unauthorized entry upon Plaintiffs' land, causing injuries to Plaintiffs' right of possession. As a result of Defendant's conduct, Plaintiffs have suffered injury to their persons and property. Plaintiffs are entitled to actual damages, mental anguish damages and exemplary damages as a result of Defendant's conduct.

### G. CONVERSION

200.    Defendant Arkema's actions described herein constitutes a conversion of Plaintiffs' property. The Plaintiffs are owners of personal property and Defendant Arkema wrongfully exercised dominion or control over Plaintiffs' property, causing Plaintiffs to suffer injuries as described herein.

### H. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

201.    Defendant Arkema's actions described herein were intentional, reckless, extreme and outrageous, proximately causing Plaintiffs to suffer severe emotional distress as a result.

### I. ASSAULT

202.    Defendant Arkema's actions as described herein constituted an assault on Plaintiffs. Defendant acted intentionally, knowingly, or recklessly, which set a force in motion that ultimately resulted in a physical assault of Plaintiffs, causing Plaintiffs to suffer severe bodily injuries. Plaintiffs are entitled to damages for their injuries, as well as exemplary damages as a result of Defendant's conduct.

### J.  FRAUD BY NON-DISCLOSURE

203.    Defendants Arkema and Bureau Veritas's actions as described herein constitute fraud by non-disclosure.  Defendants concealed from, or failed to disclose, certain facts to Plaintiffs.  Defendants had a duty to Plaintiffs to disclose the facts to them, and the facts which were concealed were material facts.  Defendants knew the Plaintiffs were ignorant of the facts and that Plaintiffs did not have an equal opportunity to discover the facts.  Defendant was deliberately silent when it had a duty to speak, and in its failure to disclose the facts, Arkema, Inc. intended to induce Plaintiffs to take some action or refrain from acting.  Plaintiffs in this suit relied on the Defendant's non-disclosure, and were injured as a result of acting without the knowledge of the undisclosed facts.

### K.  COMMON LAW FRAUD

204.    Defendants Arkema and Bureau Veritas's actions as described herein constitutes common law fraud.  Defendants made representations to Plaintiffs which were material and false.  When Defendants made these representations, they knew the representations were false, or made the representations recklessly, as a positive assertion, and without knowledge of its truth.  Defendants made the representations with the intent that Plaintiffs act on them.  Plaintiffs relied on the representations, which caused Plaintiffs to suffer injuries, as more fully described herein.

### L.  STRICT LIABLITY

205.    Arkema manufactures inherently dangerous chemicals and is strictly liable for any injuries which result from the manufacture of those chemicals.  Furthermore, due to the specific guidelines which must be followed in storing those chemicals, Arkema's storage of the inherently dangerous chemicals is an ultra-hazardous activity, for which strict liability attaches.  Arkema's chemicals were susceptible to exploding and Arkema failed to store the chemicals in such a manner

so as to prevent them from exploding.  Arkema is strictly liable for its failure to properly store the inherently dangerous chemicals, which failure was a proximate cause of the explosions and resulting injuries to Plaintiffs.

## V.   DAMAGES

206.   As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs were caused to suffer severe bodily injuries, and to incur the following damages:

A.   Reasonable medical care and expenses in the past.  These expenses were incurred by Plaintiffs for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

B.   Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

C.   Physical pain and suffering in the past;

D.   Physical pain and suffering in the future;

E.   Physical impairment in the past;

F.   Physical impairment which, in all reasonable probability, will be suffered in the future;

G.   Loss of earnings in the past;

H.   Loss of earning capacity which will, in all probability, be incurred in the future;

I.   Disfigurement in the past;

J.   Disfigurement in the future;

K.   The cost of future medical monitoring;

L.   Mental anguish in the past;

M.   Mental anguish in the future;

N.   Consequential damages, including costs of travel, alternative living costs,

30

and cleanup costs;

O.    Injury to the land that resulted in cost of repairs, loss of use, or any combination thereof;

P.    Injury to improvements on land, cost of repairs, loss of use, or any combination thereof;

Q.    Injury to business that resulted in lost profits, loss of credit or reputation thereof, loss of goodwill, or any combination thereof; and

R.    Actual damages.

## VI.    **PRAYER**

**WHEREFORE**, Plaintiffs Christy Graves, David Klozik, Edward Ariel Mejia, Brice Owens, Steven Schreiber, Brad "Bryan" Sweetman, Adan Trejo, Jr., Juan Celestial, Tommy Crosby, Efrain Hernandez, Isaac Pinson, Shannon Nichols, Martin Encisco, Glen and Tammy Peek, John Anderson, Jerome Batiste, Cheri Batiste, Brandy Blackwelder, Kevin Cox, Veronica Cox, Bear Thread Designs, Inc., Donna Craft, David Craft, Andrew Craft, Roland Cruz, Aurea Cruz, Roberto Cruz, Doralynn Davenport, Joyce Dillard, Aaron Shane Doby, Luis Galan, Valeria Ramirez, Elka Galnnier, Daussent Galnnier, Terri Glover, Wayne Glover, Ada Hill, James Hill, Retha Hill, Timothy Hoover, Donald Hoover, Peggy Hoover, Jerel Jacobs, Amanda Jacobs, Lloyd "Ray" Kirkpatrick, Channelview Refractory Services , Dusty and Candice Lucas,  Candice Lucas a/n/f of Adalynn Lucas, Dusty Lucas, Jeff Lummas, Huong Nguyen, H & H DINH Investment, LLC, Anabely Perez, Honoria Perez, Santos Perez, Ruby Perez, Emily Perez, Mike Petrey, Janice Petrey, Steven Ramey, Jacqueline Ramey, Melvin Ramey, Billy Ramey, Jose Ramirez, Aurelia Ramirez, Sylvia Ramirez, Devona Nikki Roberts, Devona Roberts a/n/f of Malachi Roberts, Devona Roberts a/n/f of Caleb Roberts, IV, Robby Smith, Bonnie Smith, Kehlin Smith, Eric Smith, Diyanna Smith, Erica Smith, Kathy Smith, Ricky Smith, Kristin Stewart, Sharon Stiles, Edith Talbert, Robert Talbert III, Edith Talbert a/n/f of Alysse Talbert, Edith Talbert a/n/f of Reed

Lee Talbert IV, Sherie Ann Taylor, Allen Bruns, Tracy Taylor, Ronnie Walker, Brenda Watkins, Ronnie Watkins, Rod Watkins, Debra Watkins, Trampus Weaver, Tammy Weaver, John Abbott, Don Fender, Clayton Ehrlich, Gerald Shelton, Matthew Smith, Orlando Jacobs, Brenda Diaz-Solis, Francisco Euresti, Robert Kruszynski, Luis Ramirez, Russell Ashworth, Edgar Batarse, Claudia Batarse, Vincent Batiste, Sondronique Batiste, Linda Bogan, Charles Bogan, Tracey Bratton, Robert Buckholt, Horacio Carpio, Jazmin Caprio, Jazmin Carpio a/n/f of A.C., Jazmin Carpio a/n/f of J.C., Alejo Carpio, Maria De Jesus Melendez, Maria De Jesus Melendez a/n/f of A.C., Maria De Jesus Melendez a/n/f of A.L.C., Maria De Jesus Melendez a/n/f of A.C., Jr., Traci Chandler, Thomas Chandler, James Chandler, Jr., Allan Joe Cisneros, Thomas Lewis, Don Nichols, Ernest Nobles, Linda Nobles, Dagoberto Perez, Maria Elena Perez, Cecilio Ramirez, Kathy Rice, Mark Santos, Leanna Santos, Mary Thomas, Bryan Thornhill, Rena Thomas Wilcox, David Wilkinson, Melissa Wilkinson, Johnny Zacharias, pray that:

1. Defendants be cited to appear and answer herein,

2. Plaintiffs be awarded their damages as more fully described in Section VI above;

3. Plaintiffs be awarded their costs of suit;

4. Pre-judgment and post-judgment interest on all applicable amounts be awarded to Plaintiffs at the maximum non-usurious rate as allowed by law;

5. Plaintiffs be awarded exemplary damages; and

6. Plaintiffs be awarded such other and further relief to which Plaintiffs may show they are justly entitled.

Respectfully submitted,

**SPURLOCK & ASSOCIATES, P.C.**

By: */s/ Misty A. Hataway-Coné*
Kimberley M. Spurlock
Texas Bar No. 24032582
Southern District Bar No. 30807
kspurlock@spurlocklaw.com
Misty A. Hataway-Coné
Texas Bar No. 24032277
Southern District Bar No. 34441
MCone@spurlocklaw.com
17280 West Lake Houston Pkwy.
Humble, TX  77346
Tel. (281) 548-0900
Fax. (281) 446-6553


**ABRAHAM, WATKINS, NICHOLS,
SORRELLS, AGOSTO & AZIZ**

By: */s/ Muhammad S. Aziz*
Muhammad S. Aziz
Texas Bar. No. 24043538
maziz@abrahamwatkins.com
800 Commerce Street
Houston, Texas 77002
Tel. (713) 222-7211
Fax. (713) 225-0827

**ATTORNEYS FOR PLAINTIFFS**

33

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 15, 2018, a copy of the above and foregoing was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

Scott C. Lannie
sclannie@aol.com
LAW OFFICES OF SCOTT C. LANNIE, P.C.
400 Garth Road, Suite 150
Baytown, Texas 77521
***Attorney for Intervenor David Baeker***

John Arthur Daspit
Frank J. Wathen
e-service@daspitlaw.com
DASPIT LAW FIRM, PLLC
440 Louisiana Street, Suite 1400
Houston, Texas 77002
***Attorneys for Intervenors Stephen Burns,***
***Johnathan Lamm, Juan Cepeda and***
***Norma Cepeda, Individually and as***
***Next Friends of L.C.***

Hart Green
hartgr@wgttlaw.com
WELLER, GREEN, TOUPS& TERRELL L.L.P.
2615 Calder Avenue, Suite 400
P.O. Box 350 (77704-0350)
Beaumont, Texas 77702
***Attorney for Intervenors Gay McCoy,***
***Kevin McCoy, Individually and as***
***Next Friend of Kurtis T. McCoy;***
***Troy and Danyel Reuter, Individually***
***and as Next Friends of Jaden Reuter***
***and Brooke Reuter***

Seth M. Cohen
seth.cohen@bracewell.com
BRACEWELL LLP
1251 Avenue of the Americas,
49th Fl. New York, New York 10020-1100
-and
William A. Moss will.moss@bracwell.com
BRACEWELL LLP
711 Louisiana, Suite 2300
Houston, Texas 77002

*Attorneys for Defendant Bureau Veritas*
*North America, Inc*

Rusty Hardin
S.D. Texas Federal I.D. No. 19424
State Bar No. 08972800
rhardin@rustyhardin.com Derek Hollingsworth
S.D. Texas Federal I.D. No. 34569
State Bar No. 24002305
dhollingsworth@rustyhardin.com
Jeremy Monthy
S.D. Texas Federal I.D. No. 1115582
State Bar No. 24073240
jmonthy@rustyhardin.com
Lara Hudgins Hollingsworth
S.D. Texas Federal I.D. No. 22913
State Bar No. 00796790
lhollingsworth@rustyhardin.com
RUSTY HARDIN & ASSOCIATES, LLP
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

-and-

Michael L. Brem
S.D. Texas Federal I.D. No. 13175
State Bar No. 02952020
mbrem@sdablaw.com
Laura F. Jones
S.D. Texas Federal I.D. No. 18219
State Bar No. 00787500
ljones@sdablaw.com
SCHIRRMEISTER DIAZ-ARRASTIA BREM LLP
Pennzoil Place - North Tower
700 Milam Street, 10th Floor
Houston, Texas 77002
Telephone: (713) 221-2500
Facsimile: (713) 228-3510
*Attorneys for Defendant Arkema, Inc.*

*/s/ Misty A. Hataway-Coné*
Misty A. Hataway-Coné